UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE MASON and MICHAEL LOMBARDO, individually and on behalf of their minor child, J.L., <br><br> Plaintiffs, <br><br> v. <br><br> ROMAN CATHOLIC ARCHDIOCESE OF TRENTON, et al., <br><br> Defendants. | Civil Action No. 18-10733(MAS)(ZNQ) <br><br> MEMORANDUM OPINION AND ORDER |

This matter comes before the Court through a series of letters filed by the parties (ECF Nos. 25, 29–30). The instant controversy centers around discovery requests made to each of the eight named defendants (collectively, "Defendants"), in which Jane Mason and Michael Lombardo (collectively, "Plaintiffs") seek, among other things, to discover school records related to prior incidents of bullying and harassment. (Pls.' Sept. 24, 2019 Letter 1–2, ECF No. 25.) Defendants objected to production, arguing that the records are confidential student records and irrelevant to Plaintiffs' claims of deliberate indifference. (Pls.' Sept. 24, 2019 Letter Ex. 1, at 4–7, ECF No. 25 (Request No. 5, 8–10).) For the reasons detailed below, the Court will order production in accord with Request Nos. 5, 8, and 10, but will tailor the requests and require personally identifying student information to be redacted. If the need arises after review and receipt of the redacted records, Plaintiffs may make the appropriate application to the Court and seek unredacted copies of records produced pursuant to this Order, or records beyond the scope of the Court's tailoring. Further, to the extent Request No. 9 was not fully answered by Defendants' response, the Court sustains Defendants' objections, but will leave the door open for Plaintiffs to seek fulfilment of

that request provided they make a more particularized showing of how those application records would be relevant to their claims.

## I. BACKGROUND AND THE DISPUTE

Plaintiffs brought this action on behalf of their minor son, J.L. (Compl. ¶ 1.) They allege that, while enrolled in and attending Defendant St. Joseph Grade School ("St. Joseph"), their son, the only African American student in his class, was bullied by his classmates and St. Joseph acted with deliberate indifference in its response. (*Id.* ¶¶ 2–13.) Plaintiffs seek damages for deliberate indifference under Title VI, deliberate indifference and discrimination under Section 1981, negligence, breach of contract, third-party beneficiary breach of contract, breach of the implied covenant of good faith and fair dealing, third-party breach of the implied covenant of good faith and fair dealing, and violations of the Consumer Fraud Act. (Compl. ¶¶ 127–29, 137, 141, 153, 165, 170, 173, 177, 183.) Plaintiffs named several other people and entities, including the Roman Catholic Archdiocese of Trenton, St. Joseph's Parish (operates St. Joseph), Reverend G. Scott Shaffer (directs St. Joseph's administration), Michele Williams (the principal), Divina Roche (the guidance counselor), Christopher Tobin (J.L.'s teacher), and Rita Dishon (Vice Principal of Discipline) (collectively, "Defendants"), as defendants in this matter. (Compl. ¶¶ 17–36.)

In their pursuit of discovery, the Plaintiffs made the following requests for production:

(5) "Copies of, and all documents and communications relating to, any other student's records, claims of racial bias, discrimination and bullying, or other official or unofficial St. Joseph's records that You maintain that mentions, reference or relates to J.L.";

(8) "All notes, documents and communications relating to any claims, allegations, complaints or incidents of alleged or perceived bullying, harassment, racism or discrimination involving St. Joseph students or personnel, directed towards any student, including J.L., while J.L. attended St. Joseph or within five (5) years before or any time after J.L. attended St. Joseph";

(9) "All documents and communications relating to applications for admission to St. Joseph, and admission rates, graduation rates, un-enrollment rates and related school statistics of non-Caucasian students at St. Joseph from 2013 – 2018"; and

2

> (10) "All documents and communications to students and their parents relating to claims, allegations, complaints or incidents of bullying, harassment and discrimination, including but not limited to allegations or complaints of bullying, harassment and discrimination of J.L."

(Pls.' Sept. 24, 2019 Letter 1–2.) Defendants objected to the production. (Pls.' Sept. 24, 2019 Letter Ex. 1, at 4–7 (Request No. 5, 8–10).) As to all four requests, Defendants claimed the information sought was irrelevant under Federal Rule of Evidence ("FRE") 401. (*Id.* at 4–6.) Specifically, Defendants highlighted that, to prevail, "Plaintiffs must show Defendants acted with deliberate indifference; that is, that Defendants' 'response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" (*Id.* (quoting *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 522 (3d Cir. 2011)).) Under that standard, they contend, unrelated incidents of bullying or harassment are irrelevant. (*Id.*) As to Request Nos. 5, 8, and 10, they object to production to the extent that Plaintiffs seek "to discover confidential and private information related to non-parties, specifically other students . . . ." (*Id.* (citing New Jersey Rule of Evidence ("NJRE") 534; 20 U.S.C. § 1232g; 34 C.F.R., Part 99; N.J.S.A. 18A:36-19; N.J.A.C. 6A:32-7.1 to -7.8).) As to Request No. 8, Defendants claim they "lack any basis for identifying 'perceived' but unreported potential incidents of bullying, harassment or discrimination." (*Id.* at 5.) As to Request No. 9, Defendants contend the request for statistics related to non-Caucasian students is vague and ambiguous, that St. Joseph's accepts all students who meet the educational requirements, and that St. Joseph's does not maintain records related to graduation rates and un-enrollment. (*Id.* at 6.) And as to Request No. 10, Defendants again argue there is no basis for them to identify perceived bullying or harassment and they object to the request on the grounds that it does not identify a time period. (*Id.*)

## II. PARTIES' ARGUMENTS

Plaintiffs argue that "evidence [] to demonstrate that [St. Joseph] experienced similar accounts of bullying or harassment, and failed to make corrections to its policies and enforcement procedures," "would be highly relevant to [their] position that [St. Joseph]'s inadequate response was clearly unreasonable." (Pls.' Sept. 24, 2019 Letter 2.) Plaintiffs cite *Wanko v. Bd. of Trustees of Indiana Univ.*, No. 116CV02789(TWP)(DML), 2018 WL 3631579, at *2–4, 8–9 (S.D. Ind. July 30, 2018), *aff'd*, 927 F.3d 966 (7th Cir. 2019) (redacted records of other students' performance and their demographic information may be produced under FERPA) and *Ke v. Drexel Univ.*, 2014 U.S. Dist. LEXIS 36531, at *6–8 (E.D. Pa. Mar. 20, 2014). (*Id.*)

In their supplemental letter, Plaintiffs discuss *Doe v. Galster*, (Pls.' Oct. 9, 2019, Letter 1–2, ECF No. 29), a case from the Eastern District of Wisconsin in which a seventh-grade student sued a school she had attended for the bullying she suffered at the hands of several classmates and sought to compel the production of student records, No. 09-C-1089, 2011 WL 2784159, at *1, 9 (E.D. Wis. July 14, 2011). The judge compelled production, finding "the plaintiff's claims require[d] her to establish what the defendants knew about the abuse she suffered, when they knew about it, what they did to stop it, *and what they did to stop harassment of similarly situated students who were of a different race, national origin, and/or sex than the plaintiff. Id.* at *10 (emphasis added). The judge noted that the plaintiff agreed to a protective order "that would protect as much as possible the privacy of the students whose records are disclosed." *Id.* at *11.

Plaintiffs also discuss *Jackson v. Willoughby Eastlake Sch. Dist.*, (*id.* at 2.), where the plaintiffs claimed the school district "failed to take affirmative steps to report, document and prevent bullying and retaliation against [the student-plaintiff] and other students," No. 1:16CV3100, 2018 WL 1468666, at *1 (N.D. Ohio Mar. 23, 2018). The court found "FERPA does

4

not create an absolute bar or privilege" and "that the [p]laintiffs' need for the discovery outweigh[ed] the students' privacy interests . . . ." *Id.* at *4. The Court required the school district to notice the students whose unredacted records could be discovered, provide them an opportunity to object, and required the parties to submit a protective order. *Id.* at *4–5.

Defendants respond that other students' interactions with each other are not part of "known circumstances," and are therefore not relevant. (Defs.' Oct. 9, 2019, Letter 2 (quoting *Whitfield*, 412 F. App'x at 521).) According to Defendants, only incidents involving the student-plaintiff that were known by the school are relevant. (*Id.*) Defendants ask the Court not to be persuaded by *Doe* because it does not describe the records sought and because it does not cite any cases supporting its decision to allow discovery of other students' records. (*Id.*) Further to that point, Defendants note that, on appeal, the Seventh Circuit focused only on the incidents between the plaintiff and her harassers. (*Id.* at 2–3 (citing *Doe v. Galster*, 768 F.3d 611, 628 (7th Cir. 2014)).) Defendants ask, however, that, if the Court determines that the documents may be relevant, that "Plaintiffs should be required to identify with specificity the documents they are requesting based on" the log provided by Defendants. (*Id.* at 3.) They also ask that the parents of students whose records may be discovered be given the opportunity to object because, while Defendants maintain they may produce redacted records without parental consent, they worry that students could be identified from the redacted records based on the specificity and detail of the records. (*Id.*)

### III. DISCOVERY OF STUDENT RECORDS

In *Whitfield*, the Third Circuit stated "a plaintiff may sue a school for money damages for its failure to address a racially hostile environment" if there is "'severe, pervasive, and objectively offensive' student-on-student harassment" and "the school 'acts with deliberate indifference to known acts of harassment.'" 412 F. App'x at 521 (quoting *Davis v. Monroe Cnty. Bd. of Educ.*,

5

526 U.S. 629, 633 (1999)). The Court added "a school may only be held liable for a Title VI claim of student-on-student racial discrimination when the school's response is 'clearly unreasonable in light of the known circumstances.'" *Id.* (quoting *Davis*, 526 U.S. at 648).

"Both New Jersey and federal law obligate schools to protect the privacy of their students' records." *M.A. v. Jersey City Bd. of Educ.*, No. CV146667(KM)(MAH), 2016 WL 7477760, at *10 (D.N.J. Dec. 29, 2016) (citing 20 U.S.C. § 1232g; N.J.S.A. § 18A:36-19). Under New Jersey law, "generally, '[p]ersons outside the school' are authorized to view confidential student records if the students' parents consent . . . or a court orders it." *Id.* (citing N.J.A.C § 6A:32-7.5(e)(14), (15)). "FERPA likewise allows for the disclosure of such records with parental consent or as a result of a court order." *Id.* (citing 20 U.S.C. § 1232g(b)). Specifically, 20 U.S.C. § 1232g(b) provides

> (2) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection, unless—
>
> (A) there is written consent from the student's parents . . . , or
>
> (B) except as provided in paragraph (1)(J), such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency . . . .

Still, while student records are discoverable pursuant to a court order without any detriment to the school, the party requesting the documents must demonstrate that his or her need for disclosure outweighs the privacy interest in maintaining the records' confidentiality. *M.A.*, 2016 WL 7477760, at *11 & n.15 ("seeking disclosure of education records protected by FERPA bears a significantly heavier burden to justify disclosure than exists with respect to discovery of other kinds of information, such as business records" (quotation omitted)); *Doe*, 2011 WL 2784159, at *10 (describing the standard as whether the interest in disclosure outweighs the interest in

6

maintaining the privilege); *C.G. v. Winslow Twp. Bd. of Educ.*, 443 N.J. Super. 415, 428 (Law. Div. 2015) (describing the standard for New Jersey's act that works in conjunction with FERPA as intending to balance the competing interests of access and privacy).

## IV. PLAINTIFFS MAY DISCOVER REDACTED RECORDS OF RACE-BASED HARASSMENT

To begin, the Court does not agree with Defendants that *Whitfield* and *Davis* limit "known circumstances" to incidents only involving the plaintiff in a particular matter. Nothing in either opinion suggests to the Court separate incidents of harassment are categorically irrelevant in deliberate indifference cases.

The Court recognizes the importance of keeping student records confidential and preserving students' privacy interests. But, to the extent that Defendants are in possession of records that may evince St. Joseph turned a blind eye to racial harassment or fostered a permissive attitude towards student racial animus, the Court finds the Plaintiffs' interest in discovering such information—once personally identifying student information is redacted—outweighs the interest in maintaining their privacy. The student records Plaintiffs seek have the potential to show whether there was, and whether St. Joseph was aware of, race-based student harassment and whether St. Joseph took appropriate action to remedy those circumstances. If shown, such evidence would likely be highly relevant to Plaintiffs' claims. The Court will thus order Defendants to comply with Plaintiffs' discovery requests—except for Request No. 9—and produce redacted copies of the student records. Once Plaintiffs receive the redacted documents, if the need arises, the Court will entertain an application to obtain un-redacted copies of particular records and hear the parties' arguments at that time.

With respect to Request No. 9, Defendants represented that they do not keep records of un-enrollment or graduation rates of its students. (Pls.' Sept. 24, 2019 Letter Ex. 1, at 6.) The Court

maintaining the privilege); *C.G. v. Winslow Twp. Bd. of Educ.*, 443 N.J. Super. 415, 428 (Law. Div. 2015) (describing the standard for New Jersey's act that works in conjunction with FERPA as intending to balance the competing interests of access and privacy).

## IV. PLAINTIFFS MAY DISCOVER REDACTED RECORDS OF RACE-BASED HARASSMENT

To begin, the Court does not agree with Defendants that *Whitfield* and *Davis* limit "known circumstances" to incidents only involving the plaintiff in a particular matter. Nothing in either opinion suggests to the Court separate incidents of harassment are categorically irrelevant in deliberate indifference cases.

The Court recognizes the importance of keeping student records confidential and preserving students' privacy interests. But, to the extent that Defendants are in possession of records that may evince St. Joseph turned a blind eye to racial harassment or fostered a permissive attitude towards student racial animus, the Court finds the Plaintiffs' interest in discovering such information—once personally identifying student information is redacted—outweighs the interest in maintaining their privacy. The student records Plaintiffs seek have the potential to show whether there was, and whether St. Joseph was aware of, race-based student harassment and whether St. Joseph took appropriate action to remedy those circumstances. If shown, such evidence would likely be highly relevant to Plaintiffs' claims. The Court will thus order Defendants to comply with Plaintiffs' discovery requests—except for Request No. 9—and produce redacted copies of the student records. Once Plaintiffs receive the redacted documents, if the need arises, the Court will entertain an application to obtain un-redacted copies of particular records and hear the parties' arguments at that time.

With respect to Request No. 9, Defendants represented that they do not keep records of un-enrollment or graduation rates of its students. (Pls.' Sept. 24, 2019 Letter Ex. 1, at 6.) The Court

has no reason to second-guess those representations. The only remaining documents sought in Request No. 9 that are not addressed by that response are "[a]ll documents and communications relating to applications for admission to St. Joseph, and admission rates, . . . related school statistics of non-Caucasian students at St. Joseph from 2013 – 2018 . . . ." (Pls.' Sept. 24, 2019 Letter 2.) The Court was not provided specific reasons why Plaintiffs would need all of St. Joseph's documents and communications related to student admissions, its admissions rates, or the like, and it is unclear how such evidence would be relevant to their claims, which revolve around student bullying. Accordingly, the Court will sustain Defendants objections to Request No. 9, but provide Plaintiffs the opportunity to explain why such records are relevant and should be produced.

Lastly, in the interest of further vindicating students' privacy interests and preventing more disclosure than necessary, the Court will tailor Request Nos. 8 and 10. As the Court reads Plaintiffs' letters, Plaintiffs appear to be seeking student records in connection with their Title VI and Section 1981 actions. Specifically, the Court finds Plaintiffs are seeking discovery of the records to discover whether St. Joseph was aware of, and did not address, student racial animus. The Court does not perceive any particular reason why Plaintiffs would need records of non-race-based harassment or bullying to prove their claims or how such records of other incidents would be relevant. Accordingly, Request No. 8 is limited to documents and communications relating to claims, allegations, complaints, or incidents of alleged racially motivated bullying, harassment, or discrimination involving St. Joseph students or personnel within five years before and any time after J.L. attended St. Joseph. And, for the same reasons, Request No. 10 is limited to documents and communications to students and their parents relating to claims, allegations, complaints, or incidents of race-based bullying, harassment, or discrimination. If Plaintiffs can show a need for other records of bullying or harassment, the Court will entertain another application at a later date,

once Plaintiffs have received and reviewed the records ordered to be produced.

## V. ORDER

**IT IS on this 8th day of November, 2019,**

that Defendants' objections to the production of documents pursuant to Plaintiffs' Request Nos. 5, 8, and 10, as tailored within this opinion, are hereby **OVERRULED**;

and it is **ORDERED** that Defendants must produce the documents in accord with those tailored requests within **THIRTY (30) DAYS** of the entry of this Order;

it is further **ORDERED** that, before producing those documents, Defendants are to redact all personally identifying student information and to notify the students and parents of those students whose records are to be produced in accord with 20 U.S.C. § 1232g(b)(2)(B);

this Order is made **WITHOUT PREJUDICE** to Plaintiffs' right to seek unredacted copies of the student records produced pursuant to this Order, or to their right to seek records of non-racially motivated bullying or harassment or allegations thereof;

should the need arise after the production of the documents at issue here, Plaintiffs' may make an application to the Court seeking unredacted copies of particular documents produced, or seeking records of non-racially motivated bullying or harassment or allegations thereof;

lastly, Defendants' objection to the production of documents pursuant to Request No. 9, to the extent that request was not answered by Defendants' response, is **SUSTAINED**;

Plaintiffs may make a more specific showing as to why the records sought in Request No. 9 are relevant to their claims, and the Court will hear that submission at that time.

_____
**ZAHID N. QURAISHI**
**United States Magistrate Judge**